Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| FIRSTBANK PUERTO RICO<br><br>Apelado<br><br>v.<br><br>HYPERBARIC SKIN AND HEALTH CLINIC, INC.; SURIMA SUÁREZ CESTERO<br><br>Apelantes | KLAN202300796 | Apelación procedente del Tribunal de Primera Instancia, Sala de Fajardo<br><br>Sobre: Cobro de Dinero, Ejecución de Prenda y Ejecución de Hipoteca por la Vía Ordinaria<br><br>Caso Número: CE2021CV00044 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de febrero de 2024.

Las apelantes, Hyperbaric Skin and Health Clinic, Inc. y la señora Surima Suárez Cestero, comparecen ante nos para que revoquemos la *Sentencia Sumaria Parcial* emitida por el Tribunal de Primera Instancia, Sala de Fajardo y notificada el 1 de mayo de 2023. Mediante la misma, el foro primario acogió una solicitud de sentencia sumaria promovida por la parte aquí apelada, FirstBank Puerto Rico (FirstBank), y, en consecuencia, declaró *Ha Lugar* una demanda sobre cobro de dinero, ejecución de prenda y ejecución de hipoteca incoada en contra de las apelantes.

Por los fundamentos que expondremos a continuación, se revoca la *Sentencia Sumaria Parcial* apelada.

**I**

El 18 de junio de 2021, FirstBank presentó la demanda de epígrafe. En lo atinente, expresó que, el 28 de enero de 2014, suscribió un contrato préstamo con las aquí apelantes, ello por la

suma principal de $649,300.00. Las apelantes respectivamente se constituyeron en deudora y garantizadora de la obligación. La misma se evidenció en un pagaré bancario a la orden de la parte apelada.

En su demanda, la parte apelada indicó que, el 29 de abril de 2015, suscribieron un documento intitulado *Enmienda a Contrato de Préstamo,* ello a fin de establecer una nueva forma de pago respecto a las mensualidades que amortizarían el balance pendiente del principal pactado en el contrato en controversia. Añadió que, con posterioridad, el 30 de junio de 2016, nuevamente suscribieron una *Segunda Enmienda a Contrato de Préstamo*, por la cual acordaron otro plan de pago a los efectos de saldar el balance insoluto. Según se sostuvo, este nuevo acuerdo, al igual que el previo, expresamente le reconoció "entera y absoluta discreción"[1] para, antes del 1 de febrero de 2019, revisar el balance adeudado por las apelantes y recalcular la mensualidad correspondiente para los siguientes cinco (5) años del plan de pago convenido. A su vez, expuso que, como condición adicional a las pactadas, las apelantes reconocieron que, a dicha fecha, la cantidad adeudada por concepto de intereses vencidos y no satisfechos ascendía a $5,051.21. Igualmente, afirmó que estas también admitieron adeudar la suma de $1,240.02 por razón de cargos por demora.

En su demanda, FirstBank afirmó que, tanto en la primera, como en la segunda enmienda efectuada al contrato de préstamo original, se ratificaron las condiciones y garantías establecidas respecto a la obligación. En relación a ello, destacó que la apelante Suárez Cestero solidariamente garantizó el debido cumplimiento de la misma, por lo que, conjuntamente con la apelante Hyperbaric Skin and Health Clinic, Inc., estaba llamada a responder. Así, y

---

[1] Véase, Apéndice: Anejo 1, *Demanda,* pág. 0005.

como primera causa de acción, denunció que las apelantes incumplieron con los términos de pago pactado, toda vez que, desde el 1 de octubre de 2017, dejaron de satisfacer las mensualidades correspondientes. Especificó que estas solidariamente adeudaban la suma principal de $505,121.73, más los intereses vencidos sobre dicha cantidad, los cuales, al 26 de mayo de 2021, totalizaban $74,738.17. Igualmente, FirstBank expresó que las apelantes también adeudaban $18,186.96 por concepto de cargos por demora, $5,051.21 por los intereses vencidos al 30 de junio de 2016 y $64,930.00 por gastos, costas y honorarios de abogado. La institución apelada expuso que, como garantía del pago debido, las apelantes dieron en prenda un pagaré hipotecario, por la suma principal de $165,000.00, garantizado, a su vez, con una hipoteca constituida sobre un inmueble propiedad de la apelante Suárez Cestero.

FirstBank incluyó una segunda causa de acción en virtud de la cual alegó que, el 6 de octubre de 2015, las aquí apelantes, también en calidad de deudora y garantizadora, suscribieron otro contrato de préstamo por la suma principal de $120,000.00. Sobre este particular, sostuvo que dicha obligación, también se evidenció en un pagaré bancario suscrito a su orden, vencedero en un término de cinco (5) años. Añadió que, el 30 de junio de 2016, las partes efectuaron una primera enmienda al préstamo de referencia, ello solo en cuanto al plan establecido para el pago de las mensualidades correspondientes, manteniendo intactos los términos, condiciones y garantías de la obligación original. Indicó que, como garantía del cumplimiento de la obligación, las apelantes suscribieron un *Acuerdo de Gravamen Mobiliario* sobre las cuentas por cobrar y el inventario presente y futuro de la entidad apelante.

Respecto a esta segunda causa de acción, el banco apelado indicó que las apelantes también incumplieron con los términos de

pago del contrato en cuestión. En específico, indicó que estas, solidariamente, adeudaban la suma de $108,089.86 por concepto del principal insoluto, más los intereses vencidos sobre dicha suma, a saber, $7,308.58. A su vez, afirmó que también adeudaban la cantidad de $990.82 por los intereses vencidos al 30 de junio de 2016, más $12,000.00 por razón de gastos, costas y honorarios de abogado. De este modo, y tras sostenerse en la exigibilidad de su derecho de pago, solicitó al Tribunal de Primera Instancia que proveyera para la total satisfacción de su acreencia, ordenando a las apelantes al pago total de las cantidades reclamadas en la demanda. En defecto de ello, peticionó que se ordenara la ejecución de la garantía hipotecaria y de los gravámenes mobiliarios suscritos a su favor. La institución apelada acompañó su demanda con los documentos acreditativos de los préstamos objeto de la reclamación.

El 23 de diciembre de 2021, la apelante Suárez Cestero presentó *Contestación a Demanda y Reconvención.* En el pliego, negó las imputaciones hechas en su contra y afirmó que las cantidades reclamadas en la demanda de epígrafe no reflejaban con exactitud el balance al descubierto de la obligación. Al abundar, indicó que, contrario a lo aducido, con posterioridad al 1 de octubre de 2017, fecha en la que la parte apelada alegó se dejó de cumplir la obligación en disputa, la empresa apelante efectuó pagos a los fines de amortizar la deuda contraída. Expuso, por igual, que, en múltiples ocasiones, solicitó a la institución apelada una relación detallada de la deuda y no fue, sino hasta el 18 de marzo de 2021, cuando se le proveyó cierta información, a su juicio, incompleta. Añadió, que la parte apelada efectuó débitos directos no autorizados de las cuentas de la compañía, que nunca les remitió un desglose de la deuda aducida, así como que no les permitió refinanciar la misma a un interés más bajo. A su vez, expresó que la institución

apelada no permitió la inspección del expediente bancario, así como, tampoco, la del pagaré objeto de ejecución.

En su alegación responsiva, la apelante Suárez Cestero afirmó que FirstBank estaba impedido de reclamar cantidad alguna por concepto de penalidad por pagos tardíos, toda vez que, en múltiples ocasiones se negó a recibir pagos parciales por los intereses pactados. De este modo, argumentó que ningún incumplimiento contractual podía imputársele, toda vez que fue la propia parte apelada quien, con sus actos, impidió que la parte deudora observara sus obligaciones. Añadió, por igual, que, tratándose, el caso, de la ejecución de una obligación prestataria garantizada mediante la constitución de una hipoteca sobre una propiedad residencial principal, resultaba de aplicación el mecanismo provisto en la Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal, Ley 184-2012, 32 LPRA sec. 2881, *et seq*. Igualmente, la apelante Suárez Cestero indicó que también eran de aplicación los términos de la Ley de Ayuda al Deudor Hipotecario, Ley 169-2016, 32 LPRA sec. 2891 *et seq,* ello al aducir que la parte apelada omitió la obligación impuesta por el referido estatuto, de orientarla, de buena fe, sobre las alternativas de mitigación de pérdidas a su haber, todo previo a la presentación de la demanda. Al abundar, también indicó que la negativa de la parte apelada en cuanto a aceptar pagos parciales para amortizar la deuda en disputa, constituyó una infracción expresa a los términos de la antedicha ley, que impedía la procedencia de sus alegaciones. Por tanto, a tenor con todos sus argumentos, la apelante Suárez Cestero solicitó la desestimación de la demanda de epígrafe.

La apelante Suárez Cestero reconvino en contra de FirstBank. En específico, alegó que el 1 de febrero de 2019, éste, unilateralmente aumentó los intereses pactados en el contrato

objeto de la primera causa de acción. Al abundar, expuso que, en el año 2017, como consecuencia del paso del huracán María por Puerto Rico, la compañía apelante notificó al banco apelado haber cerrado sus operaciones de manera temporal. Indicó, por igual, que, en el año 2020, a causa de la emergencia de salud pública derivada del virus COVID-19, también se vio precisada de cesar la operación de sus negocios. En cuanto a ello, sostuvo que, por un tiempo, y de conformidad con las enmiendas convenidas, FirstBank, bajó los intereses descritos en la primera causa de acción, más posteriormente los elevó, todo sin efectuar la notificación correspondiente.

Igualmente, la apelante Suárez Cestero reclamó que FirstBank debitaba de la cuenta comercial de la entidad apelante los intereses de los préstamos objeto de litigio, ello en cantidades distintas que no correspondían a los establecidos sobre las mensualidades pactadas. Según sostuvo, ello redundó en que el Banco, de manera indebida también reclamara el pago de ciertas sumas por concepto de penalidad por retraso. A su vez, destacó que FirstBank nunca proveyó un desglose detallado de los débitos efectuados ni de la deuda en disputa, que hizo representaciones falsas en cuanto a considerar una alternativa de repago que permitiera el cumplimiento de la obligación y que, pese a que, en la demanda, la institución apelada reclamó un gravamen mobiliario, extrajudicialmente se negó a aceptar el mismo. De este modo, y tras afirmar que la conducta de FirstBank le produjo serios y considerables daños económicos, así como sufrimientos y angustias mentales, solicitó que se declarara con lugar su reconvención.

En igual fecha, a saber, el 23 de diciembre de 2021, la apelante Hyperbaric Skin and Health Clinic, Inc., presentó su *Contestación a Demanda*. En la misma, expuso argumentos y defensas análogos que los esbozados por la apelante Suárez

Centeno. A su vez, también reconvino en contra de FirstBank, ello en iguales términos que los previamente descritos.

Así las cosas, el 31 de diciembre de 2021, FirstBank presentó su alegación responsiva respecto a las reconvenciones presentadas por las apelantes. En esencia, negó toda imputación de incumplimiento hecha en su contra. A su vez, entre sus defensas, expuso que las apelantes ratificaron todos los términos de las obligaciones objeto de litigio y que los daños por estas reclamados se derivaron de sus inobservancias en cuanto a las mismas.

Tras acontecidos múltiples trámites, el 23 de noviembre de 2022, FirstBank presentó una *Moción de Sentencia Sumaria Parcial*. En esencia, expuso que no existía controversia de hechos alguna sobre la exigibilidad de la acreencia reclamada. Al abundar, indicó que la prueba documental pertinente a su reclamo establecía que, con relación a la primera causa de acción, el 28 de febrero de 2014, las aquí apelantes, solidariamente se obligaron a asumir la deuda prestataria en litigio, evidenciada en un pagaré a su orden por la suma de $649,300.00, garantizado mediante la constitución de una hipoteca. Añadió, que tampoco existía disputa en cuanto a que, el 29 de abril de 2015, y el 30 de junio de 2016, la referida obligación fue respectivamente enmendada, ello mediante la expresa comparecencia de todas las partes involucradas, y solo para establecer el plan de pago a regir en la amortización del balance principal insoluto. Sobre ello, FirstBank afirmó que, las aquí apelantes ratificaron todos los términos, cláusulas y garantías originalmente pactados, incluyendo el asumir todas las penalidades convenidas en caso de mediar algún incumplimiento.

En el pliego, FirstBank reiteró que, desde el 1 de octubre de 2017, las apelantes dejaron de satisfacer las mensualidades correspondientes, razón por la cual se vio precisado de declarar el vencimiento de la deuda objeto de la primera causa de acción. Así,

y apoyándose en una declaración jurada suscrita por la Oficial de Préstamos Especiales de la institución, indicó que estas, solidariamente, adeudaban una suma principal de $505,121.73, más $109,121.52 por concepto de los interesen vencidos. A su vez, reclamó el pago de $5,051.21 por los cargos por demora conforme pactado, así como una cantidad adicional de $64,930.00 por razón de las costas, gastos y honorarios de abogado convenidos. FirstBank destacó el hecho de que, a tenor con la prueba documental pertinente, claramente surgía que las apelantes garantizaron el cumplimiento debido mediante la entrega en prenda de un pagaré hipotecario a su orden, por la suma principal de $165,000.00, asegurado, a su vez, por la constitución de una hipoteca sobre un inmueble propiedad de estas. Añadió, por igual, que también ofrecieron en garantía un gravamen mobiliario sobre determinados bienes muebles.

En su solicitud de sentencia sumaria, FirstBank también expuso que tampoco existía controversia sobre la efectiva exigibilidad de la obligación constitutiva de su segunda causa de acción, derivada del contrato de préstamo suscrito el 6 de octubre de 2015, por la suma principal de $120,000.00. Sobre este particular, por igual afirmó, que la prueba documental acreditaba, de manera concluyente, la obligación solidaria de las apelantes en cuanto a acatar los términos del mismo, así como la constitución de un gravamen mobiliario como garantía y el incumplimiento de su deber de pago.

FirstBank afirmó que, desde el 1 de octubre de 2017, las apelantes dejaron de emitir la mensualidad correspondiente a la amortización del préstamo en disputa, razón por la cual, declaró el vencimiento de la deuda. Así, sostuvo que, en cuanto a esta segunda causa de acción, surgía de la prueba que las apelantes adeudaban una suma principal de $108,089.86, más $12,402.31

por razón de los intereses vencidos. De igual modo, sostuvo que venían llamadas a satisfacer una cantidad de $1,176.64 por concepto de cargos por demora, así como un monto adicional de $12,000.00 correspondientes a las costas, gastos y honorarios de abogado. Así, en virtud de todo lo antes expuesto, el Banco apelado solicitó que se dictara sentencia sumaria parcial a su favor, ordenando a las apelantes satisfacer la totalidad de las sumas reclamadas y, en su defecto, la ejecución de la garantía hipotecaria ofrecida a su favor.[2]

Tras ciertas incidencias, el 9 de enero de 2023, la apelante Hyperbaric Skin and Health Clinic, Inc. presentó su escrito de *Réplica a Moción Solicitando Sentencia Sumaria Parcial.* En esencia, se opuso a la exigibilidad y liquidez de la deuda en los términos aducidos por FirstBank, ello al afirmar que existía una genuina controversia respecto a las cuantías reclamadas. Sobre ello, expresó que las sumas expuestas en la demanda eran imprecisas, lo que impedía la adjudicación sumaria del asunto. En específico, indicó que, contrario a lo aducido por FirstBank, la alegada falta de pago, ello con posterioridad al 1 de octubre de 2017, estaba en disputa. En apoyo a su defensa, expresó que, del contenido de la deposición

---

[2] El apelado FirstBank acompañó su *Moción de Sentencia Sumaria Parcial* con la siguiente prueba documental: 1) Copia del *Contrato de Préstamo,* con fecha del 28 de enero de 2014; 2) copia de *Pagaré Bancario* del 28 de enero de 2014, por la suma de $649,300.00; 3) copia de *Enmienda a Contrato De Préstamo* con fecha del 29 de abril de 2015; 4) copia de *Segunda Enmienda a Contrato de Préstamo* del 30 de junio de 2016; 5) copia de documento intitulado *Garantía* con fecha del 28 de enero de 2014; 6) copia de *Declaración Jurada* suscrita por la señora Marianne Spickers Sepúlveda, Oficial de Préstamos Especiales de FirstBank, en la que dio fe de las cantidades alegadamente adeudadas por las apelantes en ambas causas de acción según promovidas por FirstBank; 7) copia de *Contrato de prenda* del 28 de enero de 2014; 8) copia de *Pagaré Hipotecario* suscrito por la apelante Suárez Cestero, a la orden de FirstBank, por una suma de $165,000.00; 9) copia de *Escritura de Hipoteca* con fecha del 28 de enero de 2014; 10) copia de *Acuerdo de Gravamen Inmobiliario* de 28 de enero de 2014; 11) copia de *Declaración de Financiamiento* emitida por el Departamento de Estado sobre la apelante Hyperbaric Skin and Health Clinic, Inc.; 12) copia de *Contrato de Préstamo* con fecha del 6 de octubre de 2015, por la suma de $120,000.00; 13) copia de *Primera Enmienda a Contrato de Préstamo y Ratificación de Documentos,* del 30 de junio de 2016; 14) copia de *Pagaré Bancario* por la suma de $120,000.00, con fecha del 30 de junio de 2016; 15) copia de *Acuerdo de Gravamen Mobiliario* de 6 de octubre de 2015; 16) copia de *Declaración de Financiamiento* emitida por el Departamento de Estado; 17) copia de *Certificación Registral de Propiedad* emitida por el Registro Inmobiliario Digital de Puerto Rico.

efectuada al señor Juan R. Muñoz Santos, funcionario del Banco apelado, surgía una admisión contraria a las afirmaciones que FirstBank hizo sobre el referido impago. Igual argumento expuso en cuanto al contenido de la deposición de la Oficial de Préstamos Especiales de la entidad, la señora Marianne Spickers Sepúlveda. Sobre la señora Spickers Sepúlveda, destacó que esta admitió que, luego del 1 de octubre de 2017, la entidad recibió ciertos pagos respecto a las obligaciones en disputa, lo cual derrotaba la suficiencia de la declaración jurada que suscribió y con la cual FirstBank sustentó su solicitud de sentencia sumaria.

En su oposición, la apelante Hyperbaric Skin and Health Clinic, Inc. también sostuvo que existía una genuina disputa sobre cumplimiento de FirstBank con sus obligaciones como acreedora. Sustentándose en las deposiciones de los antedichos oficiales del Banco, indicó que la institución nunca le aclaró las cantidades exactas al descubierto, hecho que no la colocó en posición para ejercer el cumplimiento debido. De este modo, la compañía apelante se reafirmó en que la suma objeto de la deuda reclamada era incierta, por lo que resultaba meritoria la presentación de prueba tendente a establecer la cuantía real al descubierto. Así, solicitó al Tribunal de Primera Instancia que denegara la *Moción de Sentencia Sumaria* promovida por FirstBank.[3]

Al siguiente día, el 10 de enero de 2023, la apelante Suárez Cestero presentó su *Moción en Oposición a Sentencia Sumaria Parcial.* En esencia, expuso los mismos argumentos que la apelante Hyperbaric Skin and Health Clinic, Inc., esbozó en su escrito de réplica. Por igual, acompañó su moción con la misma prueba documental.

---

[3] La apelante Hyperbaric Skin and Health Clinic, Inc., acompañó su *Réplica a Moción Solicitando Sentencia Sumaria Parcial* con la siguiente prueba documental: 1) copia de extractos de la *Transcripción de Deposición Oral del Sr. Juan R. Muñoz Santos,* del 6 de octubre de 2022 y; 2) copia de extractos de la *Transcripción de Deposición Oral de Marianne Spickers Sepúlveda.*

El 12 de enero de 2023, FirstBank presentó su escrito de *Réplica a Oposición a Sentencia Sumaria Parcial*. En principio, argumentó que los escritos en oposición a su solicitud de sentencia sumaria no cumplieron con las exigencias procesales establecidas en la Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b). Al abundar, indicó que las apelantes no acompañaron sus respectivas comparecencias con declaración jurada alguna en la que apoyaran la legitimidad de sus argumentos. A su vez, expresó que la copia de la deposición de la señora Spickers Sepúlveda nunca se le remitió, por lo que su contenido era inadmisible en evidencia. Añadió que, toda vez ello, la declaración jurada por esta suscrita y con la cual acompañaron la *Moción de Sentencia Sumaria*, debía considerarse como conclusiva en cuanto a la exigibilidad de la deuda reclamada en la demanda. Sobre este particular, destacó que la señora Spickers Sepúlveda dio fe de que los pagos que, con posterioridad al 1 de octubre de 2017, las apelantes efectuaron, correspondían a una amortización parcial de los intereses vencidos, que todos fueron debidamente acreditados a dicho concepto, y que estas no emitieron pago alguno ulterior por concepto del principal adeudado. De esta forma, y tras aducir, por igual, que los argumentos de las apelantes no fueron detallados a los fines de controvertir los hechos por ella expuestos, FirstBank solicitó que se procediera a dictar sentencia sumaria parcial en el caso, todo de conformidad con su súplica.

Tras entender sobre la evidencia sometida a su consideración, el 1 de mayo de 2023, el Tribunal de Primera Instancia dictó *Sentencia Sumaria Parcial* en el caso de epígrafe. En la misma, expuso que la prueba con la cual FirstBank apoyó sus alegaciones, estableció la constitución y términos de las obligaciones prestatarias en litigio, así como el incumplimiento contractual imputado. Al abundar, la sala sentenciadora aludió a las admisiones de las

apelantes, ello en cuanto a que no existía controversia alguna con relación a la efectiva existencia de una deuda a favor de FirstBank, producto de dos contratos de préstamo válidos respectivamente suscritos en los años 2014 y 2015. A su vez, el foro sentenciador destacó que, a pesar de que las apelantes afirmaban que FirstBank no tomó en cuenta los pagos que realizaron con posterioridad al 1 de octubre de 2017, y que el banco no las colocó en condiciones idóneas para cumplir con su deber de pago, estas no especificaron las sumas que entendían realmente adeudadas.

En su dictamen, la sala sentenciadora se pronunció respecto a la evidencia documental con la cual acompañaron sus respectivos escritos de réplica a la solicitud de sentencia sumaria en controversia. En específico, descartó la admisibilidad de la deposición de la señora Spickers Sepúlveda, toda vez que la misma no se notificó a FirstBank, para propósitos de revisión y aprobación, ello de conformidad con lo dispuesto en la Regla 27.8 de Procedimiento Civil, 32 LPRA Ap. V., R. 27.8. Ahora bien, indicó que, aun cuando la referida deposición hubiese sido admitida, la declaración jurada por esta suscrita en apoyo a las alegaciones del Banco apelado estableció que los pagos efectuados por las apelantes con posterioridad al 1 de octubre de 2017, contrario a lo aducido por estas, sí fueron considerados, toda vez que se aplicaron a la deuda por concepto de los intereses al descubierto. Así, determinó que, contrario a lo alegado por estas, los mismos sí fueron considerados por la institución. De igual modo el tribunal primario también descartó lo declarado por el señor Muñoz Santos en su deposición, ello al intimar que sus expresiones no eran concluyentes.

En su *Sentencia,* el Tribunal de Primera Instancia se expresó en torno a los argumentos que, en reconvención, las apelantes expusieron en contra del Banco apelado. Particularmente, dispuso

que parte de sus alegaciones eran incompatibles con sus expresas admisiones sobre la inexistencia de disputa alguna en cuanto a la validez de los términos de sus obligaciones frente a FirstBank, así como respecto a la efectiva existencia de una deuda en litigio. El foro primario también resolvió que las alegaciones relativas a la supuesta negativa del banco en cuanto a aceptar parte de su equipo mobiliario para acreditar su valor a la deuda, se habían tornado académicas, ello dada la venta de los mismos, según notificado mediante moción del 17 de noviembre de 2022. De este modo, el Tribunal de Primera Instancia resolvió que las alegaciones en reconvención por daños derivados de lo antes expuesto no cumplían con el criterio de relación causal, hecho que tornaba las mismas improcedentes.

A tenor con todo lo antes expuesto, el Tribunal de Primera Instancia concluyó que los hechos establecidos por FirstBank no fueron controvertidos por las apelantes. En consecuencia, les ordenó satisfacer, de manera solidaria, todas las cantidades reclamadas por la entidad apelada. En defecto de ello, proveyó para que se procediera con la ejecución de la garantía hipotecaria ofrecida por las apelantes, todo hasta el completo saldo de la acreencia correspondiente.

Inconforme, y luego de denegada una previa solicitud de reconsideración, el 8 de septiembre de 2023, las apelantes comparecieron ante nos mediante el presente recurso de apelación. En el mismo proponen el siguiente señalamiento:

> Erró el Honorable Tribunal de Primera Instancia al declarar Con Lugar una Moción de Sentencia Sumaria Parcial de la parte apelada cuando de la propia prueba presentada por la parte apelada y la presentada por la parte apelante existían controversias de hechos esenciales sobre la cuantía adeudada que impedían dictar sentencia.

Luego de examinar el expediente de autos, procedemos a disponer de la controversia que nos ocupa.

**II**

La Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite a una parte que solicite un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Así, el tribunal podrá dictar sentencia sumaria parcial para resolver cualquier controversia que sea separable de las controversias restantes. 32 LPRA Ap. V, R. 36.1; *Oriental Bank v. Caballero García*, 2023 TSPR 103, 212 DPR ___ (2023); *Camaleglo v. Dorado Wings, Inc.*, 118 DPR 20, 25 (1986). Este mecanismo procesal es un remedio de carácter extraordinario y discrecional. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa que trate. *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018). Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable". *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 980. De este modo, y debido a la ausencia de criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo. *Universal Ins. y otro v. ELA y Otros,* 211 DPR 455, 457 (2023); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665 (2000).

La doctrina considera que el uso apropiado de este recurso contribuye a descongestionar los calendarios judiciales y fomenta así los principios de celeridad y economía procesal que gobiernan nuestro ordenamiento jurídico. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 979-980*; Vera v. Dr. Bravo,* 161 DPR 308, 331-332 (2004). Por tanto, la sentencia sumaria permite la pronta adjudicación de las controversias cuando una audiencia formal

resulta en una dilación innecesaria de la tarea judicial. Así pues, esta solo debe ser utilizada en casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y falte solo disponer de las controversias de derecho existentes. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 676; *Vera v. Dr. Bravo,* supra, pág. 334; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer mediante prueba admisible en evidencia la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Rodríguez García v. UCA,* supra, pág. 941; *Ramos Pérez v. Univisión,* 178 DPR 200, 218 (2010); *Vera v. Dr. Bravo,* supra, pág. 333. Para que tal sea el resultado, viene llamado a desglosar en párrafos numerados los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos, debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que sirven de apoyo a su contención. 32 LPRA Ap. V, R. 36.3(a)(4); *Roldán Flores v. M. Cuebas, et al.*, supra pág. 677*; SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 432-433 (2013).

Para derrotar una moción de sentencia sumaria, la parte que se opone a la misma viene llamada a presentar declaraciones juradas o documentos que controviertan las alegaciones pertinentes. 32 LPRA Ap. V, R. 36.5. Por ello, tiene la obligación de exponer de forma detallada aquellos hechos relacionados al asunto que evidencien la existencia de una controversia real que deba ventilarse en un juicio plenario. *Roldán Flores v. M. Cuebas, et al.*, supra, pág. 678*; SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 434; *Rodríguez de Oller v. TOLIC,* 171 DPR 293, 311 (2007). En esta tarea, tiene el deber de citar específicamente los párrafos, según

enumerados por el promovente, sobre los cuales estima que existe una genuina controversia y, para cada uno de los que pretende controvertir, detallar de manera precisa la evidencia que sostiene su impugnación. Regla 36.3(b)(2) de Procedimiento Civil, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 433.

Cuando de las propias alegaciones, admisiones o declaraciones juradas surge una controversia *bona fide* de hechos, la moción de sentencia sumaria resulta ser improcedente. Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria en el caso y cualquier duda en su ánimo lo debe llevar a resolver en contra de dicha solicitud. *Vera v. Dr. Bravo,* supra, pág. 333-334*; Mgmt. Adm. Servs., Corp. v. ELA,* 152 DPR 599, 611 (2000). Al evaluar la solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de hechos. *Rodríguez García v. UCA,* supra, pág. 941; *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 618 (1990). Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales y esenciales de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, 185 (2005). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al.,* supra, pág. 981-982; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 114 (2015); *Vera v. Dr. Bravo,* supra, pág. 334.

En *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119, el Tribunal Supremo de Puerto Rico estableció el estándar específico a emplearse por este foro apelativo intermedio al revisar las determinaciones del foro primario con relación a los dictámenes de sentencias sumarias.  A tal fin, se expresó como sigue:

> **Primero,** reafirmamos lo que establecimos en *Vera v. Dr. Bravo,* supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra,* y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

> **Segundo,** por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y discutidos en *SLG Zapata-Rivera v. JF Montalvo,* supra.

> **Tercero,** en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

> **Cuarto,** y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

**III**

En la presente causa, las apelantes señalan que el Tribunal de Primera Instancia erró al declarar con lugar la solicitud de sentencia sumaria promovida por FirstBank y, en consecuencia, al proveer para la acción de cobro de epígrafe, ello en los términos solicitados. En específico, aducen que el foro primario incidió al no considerar que la prueba sometida a su escrutinio estableció una genuina controversia de hechos sobre la cuantía de la deuda reclamada, que impedía disponer del asunto mediante el empleo del referido mecanismo adjudicativo. Habiendo entendido sobre el antedicho señalamiento, a la luz de los hechos y la norma aplicable, revocamos la *Sentencia Sumaria Parcial* apelada.

Un examen de la evidencia contenida en el expediente que nos ocupa nos lleva a concluir que, conforme proponen las apelantes, existe una genuina controversia de hechos que, en la causa de epígrafe, impide la preterición del cauce ordinario de los procedimientos. A nuestro juicio, los documentos que tuvimos a nuestro haber revisar, evidencian que resulta meritorio definir, con mayor precisión, la cuantía de la acreencia de FirstBank. Es nuestro parecer que, contrario a lo resuelto por la sala sentenciadora, la prueba documental con la cual el Banco apelado acompañó su pliego no es concluyente en cuanto a la exactitud de la deuda que, según resuelto, las apelantes vienen obligadas a saldar. Al respecto, intimamos que, conforme se alega ante nos, la evidencia presentada muestra inconsistencias en sus aseveraciones que inciden sobre la determinación judicial que avaló la exigibilidad y liquidez de la deuda reclamada. Somos del criterio que, a los fines de que los derechos y obligaciones de los comparecientes se adjudiquen correctamente, resulta meritorio precisar si, en efecto, los pagos efectuados por las apelantes con posterioridad al 1 de

octubre de 2017 fueron acreditados a su favor, de modo que pueda calcularse la cuantía real de la deuda en disputa.

En principio, y en la observancia de las exigencias propias al ejercicio de las funciones de revisión que nos asisten, determinamos que, tras revisar la forma y contenido, tanto de la solicitud de sentencia sumaria promovida por FirstBank, como de las oposiciones sometidas por las apelantes, los referidos pliegos observan los criterios y exigencias procesales estatuidas en la Regla 36 de Procedimiento Civil, *supra*, y su doctrina interpretativa. De igual modo, y en la ejecución de nuestras facultades, resolvemos que, tal cual se dispuso, no existe controversia en cuanto a que las partes de epígrafe estaban vinculadas mediante dos contratos de préstamo válidamente suscritos. Así, no están en disputa: el origen, términos, condiciones, enmiendas y obligaciones mutuas pactadas en los acuerdos de referencia. Igualmente, a tenor con la prueba y con las admisiones de las apelantes, son hechos incontrovertidos el incumplimiento en cuanto al deber de pago que a estas les asiste, la solidaridad de las apelantes al asumir las obligaciones pertinentes, su ratificación sobre los términos contractuales, ello en atención a las enmiendas de los mismos, la efectiva constitución de una garantía hipotecaria a favor de FirstBank, así como una de carácter mobiliario, también suscrita para asegurar el cumplimiento debido.

Ahora bien, tal cual indicáramos, los documentos sometidos para legitimar la disposición del asunto mediante el mecanismo adjudicativo empleado no establecen una ausencia total de asuntos litigiosos entre las partes. Al entender sobre la demanda de autos, el argumento expuesto por FirstBank para legitimar la alegada exigibilidad de la deuda en cuestión, lo fue el que las apelantes dejaron de cumplir con su obligación de pago desde el 1 de octubre de 2017. Sin embargo, conforme estas plantean, el propio contenido de la declaración jurada con la cual el Banco apelado acompañó su

petitorio derrota la oponibilidad de dicha afirmación. En específico, si bien, en la misma, la señora Spickers Sepúlveda dio fe de que, luego de la referida fecha, las apelantes no amortizaron la deuda, esta, en evidente *contradicción*, expresamente admitió que, luego del 1 de octubre de 2017, las apelantes sí emitieron ciertos pagos que, alegadamente se acreditaron a la amortización de los intereses al descubierto.[4] Ello, de por sí, debió haber movido el criterio adjudicativo del foro sentenciador a auscultar con mayor rigor la verdad de lo aseverado por FirstBank, toda vez que su propia prueba se mostraba contradictoria, e, incluso, imprecisa. Lo anterior puesto que, pese a que la declarante afirmó que los pagos posteriores a la fecha en cuestión fueron debidamente acreditados a uno de los conceptos adeudados, no precisó suma específica alguna que permitiera avalar la corrección del cómputo expuesto como deuda total.

Además, intimamos que lo anterior no constituyó la única prueba de la cual disponía el Tribunal de Primera Instancia para considerar los argumentos que, en oposición a la *Moción de Sentencia Sumaria* promovida por FirstBank, las apelantes expusieron. En apoyo a sus planteamientos de réplica, estas presentaron copia de la deposición del señor Muñoz Santos, funcionario del Banco apelado. Una sosegada lectura de su contenido revela que este admitió que, luego del 1 de octubre de 2017, las apelantes, efectuaron, al menos, once pagos adicionales. Al ser inquirido sobre si las cantidades abonadas por las apelantes fueron acreditadas a su deuda, ello en alguno de los conceptos reclamados, este reconoció desconocer si la entidad apelada adjudicó los pagos en cuestión. Sobre este aspecto particular,

---

[4] Véase: Apéndice, *Declaración Jurada* suscrita por la señora Marianne Spickers Sepúlveda, pág. 0745-0746.

destacamos que el tribunal primario estimó como "no concluyente"[5] la deposición del señor Muñoz Santos, ello por razón de que "manifestó repetidamente que no recordaba, no tenía conocimiento o no sabía" sobre el destino de las sumas aportadas por las apelantes luego del 1 de octubre de 2017. Lejos de que dichas manifestaciones le resultaran insuficientes a los fines de establecer una genuina controversia de hechos, consideramos que las mismas claramente advirtieron al Tribunal de Primera Instancia la necesidad de dilucidar, en juicio plenario, el verdadero alcance del derecho de cobro sometido a su escrutinio. Siendo de este modo y a la luz de todo lo antes esbozado, no vemos cómo las cantidades expuestas por la entidad apelada fueron tomadas como correctas.

Este Foro entiende que la liquidez de la deuda objeto de la reclamación de epígrafe, está genuinamente en disputa. Los hechos aquí descritos plantean una controversia real respecto a los elementos de la acción ejercida por FirstBank, que impiden soslayar la vía ordinaria de adjudicación. La acreditación de los pagos que con posterioridad al 1 de octubre de 2017 las apelantes efectuaron, no quedó establecida por la prueba documental que obra en autos. Ello, en consecuencia, impugna la corrección de las cuantías reclamadas por FirstBank. De ahí que, a los efectos de concretar la suma total a cuyo recobro, en efecto, tiene derecho, resulta forzosa la celebración de un juicio en su fondo que permita establecer su certeza.

Finalmente, entendemos menester expresarnos en torno a la adjudicación de la *Reconvención* de las apelantes, que culminó con su desestimación. De la *Moción de Sentencia Sumaria Parcial* promovida por FirstBank, no surge alegación alguna relativa a los

---

[5] Véase: Apéndice, *Sentencia Sumaria Parcial*, pág. 0944.

méritos de las alegaciones de las apelantes. Por tanto, intimamos que el foro primario estaba impedido de disponer de la misma.

**IV**

Por los fundamentos que anteceden, se revoca la *Sentencia Sumaria Parcial* apelada. Se ordena la celebración de una vista en su fondo para que se dirima la cuantía real de la deuda objeto de litigio, ello a la luz de la totalidad de los pagos efectuados por las apelantes según lo aquí resuelto, así como la validez, si alguna, de las alegaciones de la reconvención.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones